UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FIRST MERCURY INSURANCE COMPANY,<br><br>Defendant. | Case No. 18-cv-03592-HSG<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

Pending before the Court is Plaintiff Mesa Underwriters Specialty Insurance Company ("Mesa")'s motion for partial summary judgment against Defendant First Mercury Insurance Company ("First Mercury"), briefing for which is complete. Dkt. Nos. 26 ("Mot."), 29 ("Opp."), 30 ("Reply"). After carefully considering the parties' arguments, the Court **DENIES** Plaintiff's motion.[1]

**I. BACKGROUND**

**A. *Borrego* Action**

On September 30, 2014, Borrego Solar Systems, Inc. ("Borrego"), filed a complaint against Campbell Certified, Inc. ("Campbell"), Reno Contracting, Inc. ("Reno"), and others employed by Borrego to help construct seven solar carports ("Subject Projects"). Dkt. No. 27 ("Young Decl.") Ex. 1 ("*Borrego* Compl."). Construction of the Subject Projects was completed by 2012. Mot. at 1; Opp. at 1. Borrego's complaint alleged that:

---

[1] Mercury raises various evidentiary objections. *See* Opp. at 22–24. The Court does not separately consider these, however, because the Court does not here consider for its truth any evidence to which First Mercury objects.

> During recent wind events, certain aspects of the Subject Projects failed to perform as intended and expected, resulting in property damage. Investigation of the cause of these failures revealed that the structures were deficiently designed and constructed in that, among other things, they failed to meet applicable building codes, failed to comply with contractual requirements, were not fit for their intended purpose and were not designed and constructed according to proper practices, the applicable standard of care or in a workmanlike manner.

*Borrego* Compl. ¶ 43. Mesa alleges the wind events referenced in the complaint took place in 2014, well after the completion of construction. *See* Mot. at 1.

### B. The Insurance Policies and This Action

Mesa issued general liability insurance policies covering Campbell and Reno (collectively "the common insureds") between November 12, 2010 and November 12, 2012. Young Decl. Exs. 9–10. The common insureds then had two general liability insurance policies from First Mercury, which collectively covered the period between November 12, 2012 and March 12, 2015, the second of which provided property damage coverage at the time when the alleged wind events took place. *Id.* Ex. 13, Ex. 14 ("Mercury Policy").

The *Borrego* complaint was ultimately tendered to both Mesa and First Mercury. Mesa defended Campbell and Reno in the *Borrego* action subject to a reservation of rights, and claims to have incurred over $1 million in fees and costs related to that defense. Young Decl. ¶ 11, Exs. 11–12. And in or around August 2018, Borrego reached a settlement with Campbell and Reno, which was funded by Mesa. *Id.* ¶ 24. First Mercury, on the other hand, denied coverage on several occasions, citing—among other reasons—a "Continuous or Progressive Injury and Damage Exclusion" in the Mercury Policy. *Id.* Ex. 18 (July 2015 denial citing Mercury Policy at MUSIC003257), Ex. 20 (February 2018 denial citing same), Ex. 23 (June 2018 denial citing same and other exclusions). This exclusion provides:

> This insurance does not apply to:
>
> 1. Any damages arising out of or related to "bodily injury" or "property damage" whether such "bodily injury" or "property damage" is known or unknown,
>
>     (a) which first occurred in whole or in part prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

> (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury," or "property damage" continues during this policy period; or
>
> (c) *which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy.*
>
> . . .
>
> We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

Mercury Policy at MUSIC003257 (emphasis added).

On June 15, 2018, Mesa filed this action against First Mercury, seeking a declaratory judgment that First Mercury has a duty to defend and indemnify the common insureds, as well as contribution reimbursing Mesa for its expenses related to the *Borrego* action. Dkt. No. 1 ¶¶ 15–19; *see also* Dkt. No. 15 ¶¶ 24–28 (operative complaint seeking the same).

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce

3

evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

The only dispute before the Court concerns whether First Mercury had a duty to defend the common insureds against claims asserted in the *Borrego* action. And the dispositive issue is whether the Continuous or Progressive Injury and Damage Exclusion justifies First Mercury's denial of coverage.

### A. Duty to Defend

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). As the Supreme Court of California has explained, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might

4

be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1160 (Cal. 1993). "Even if it is ultimately determined no coverage existed, the insurer refusing to defend is liable for defense costs if there was any potential of coverage under the policy during pendency of the action." *Md. Cas. Co. v. Nat'l Am. Ins. Co.*, 56 Cal. Rptr. 2d 498, 501 (Ct. App. 1996) (internal brackets omitted).

To determine whether the insurer owes a duty to defend, courts first "compare the allegations of the complaint—and facts extrinsic to the complaint—with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (internal quotation marks and brackets omitted). "[U]nder California law, the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (internal quotation marks omitted). "It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not." *Id.* at 1269. "Any doubt as to whether these facts trigger a duty to defend is resolved in favor of the insured." *Pension Tr. Fund*, 307 F.3d at 949. Further, "[i]f any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The insurer bears a heavy burden to show that it does not have a duty to defend. While the "insured need only show that the underlying claim *may* fall within policy coverage[,] the insurer must prove it *cannot*." *Montrose Chem. Corp.*, 861 P.2d at 1161. To this point, "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Tr. Fund*, 307 F.3d at 951. "Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Id.* at 949 (internal quotation marks and brackets omitted). An insurer's duty to defend can generally be resolved at the summary judgment stage.

5

*Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007) (citing *Transamerica Ins. Co. v. Superior Court*, 35 Cal. Rptr. 2d 259, 263 (Ct. App. 1994)).

### B. Analysis

Whether First Mercury had a duty to defend the common insured turns on Section 1(c) of the Continuous or Progressive Injury and Damage Exclusion. That section explains that the Mercury Policy does not apply to "[a]ny damages arising out of or related to . . . 'property damage' . . . which [was] caused, or [is] alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy." Mercury Policy at MUSIC003257 (emphasis added).

Mesa contends that, because at least some of the damages alleged in the *Borrego* complaint are traceable to "wind events" that could have first occurred during the Mercury Policy period, the exclusion does not preclude First Mercury's duty to defend. Mot. at 12–13. Mesa further contends that, even if all damages alleged in the *Borrego* action were caused by pre-policy factors, Section 1(c) cannot be enforced because it is both ambiguous and fatally inconspicuous. *Id.* at 13–20. The Court addresses each argument in turn.

#### i. Timing of Damages

Mesa's contention that damage caused by wind events referenced in the *Borrego* complaint that allegedly occurred during the Mercury Policy period is not subject to the progressive-damage exclusion ignores the plain language of both Section 1(c) and the *Borrego* complaint. Section 1(c) excludes damages "which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy." Mercury Policy at MUSIC003257. Mesa does not dispute that all purportedly defective construction was completed before the Mercury Policy period. *See* Dkt. No. 29-3 Ex. A (Mesa's Responses to First Mercury's Requests for Admissions), at 2–5. And although the *Borrego* complaint sought coverage for damages arising from wind events that allegedly occurred during the Mercury Policy period, those damages were unambiguously alleged to have been *caused* by the pre-policy defective construction. *See Borrego* Compl. ¶¶ 43–46. For purposes of Section 1(c), then, the dates of the wind events that triggered discovery of the alleged pre-policy defective

6

construction are irrelevant to First Mercury's duty to defend.

### ii. Ambiguity

Any ambiguity in the Mercury Policy "is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." *AIU Ins. Co. v. Superior Court*, 799 P.3d 1253, 1264 (Cal. 1990) (citing Cal. Civ. Code § 1649). "If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist." *Id.*

Mesa contends that Section 1(c) is ambiguous for two reasons, neither of which the Court finds persuasive. First, Mesa alleges that the second "which" in Section 1(c) could refer either to "Any damages arising out of" or to "defective construction." Mot. at 17. Second, Mesa contends the heading "Continuous or Progressive Injury and Damages Exclusion" implies that the scope of each section should be limited to the traditional scope of a progressive-damages exclusion. *Id.* at 10–20.

To start, Mesa's attempt to create ambiguity concerning the second "which" in Section 1(c) is not persuasive. Section 1(c) reads: "which were caused, or are alleged to have been caused, by the same condition(s) or defective construction *which first existed prior to the inception date of this policy*." Mercury Policy at MUSIC003257 (emphasis added). Mesa's proffered alternative interpretation—that the "which" relates to "Any damages arising out of"—renders Section 1(c) indecipherable. That interpretation requires that both the phrase "which were caused, or alleged to have been caused, by the same condition(s) or defective construction" and the phrase "which first existed prior to the inception date of this policy" modify "damages." Such an interpretation would read, in effect:

> 1. Any damages arising out of or related to "bodily injury" or "property damage" whether such "bodily injury" or "property damage" is known or unknown . . .
>
>     (c) which were caused, or are alleged to have been caused, by the same condition(s) or defective construction [and which damages] first existed prior to the inception date of this policy.

Under such a reading, the phrase "*the same* condition(s) or defective construction" becomes

7

unclear, as the reader is left to guess what "condition(s)" are "the same" as those presented in Section 1(c).

"The natural and grammatical use of a relative pronoun is to put it in close relation with its antecedent, its purpose being to connect the antecedent with a descriptive phrase." *Carondelet Canal & Navigation Co. v. Louisiana*, 233 U.S. 362, 382 (1914). Mesa's proffered alternative interpretation disregards this basic rule, and finds no support in the language or grammar of the policy. The Court thus finds Mesa's proposed confusion does not render Section 1(c) ambiguous. *See Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 574 (Cal. 1999) ("The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity.").

Mesa next contends that the heading "Continuous or Progressive Injury and Damages Exclusion" clearly applies to Sections 1(a) and 1(b), but does not encompass the Section 1(c) exception. Mot. at 13–14. Although Section 1(c) may not, on its face, deal with damages that Mesa considers traditionally "progressive" or "continuous," Mesa cites no binding precedent for the principle that an otherwise unambiguous clause may be rendered ambiguous solely by the heading under which it appears. Further, other than the clearly unreasonable interpretation of Section 1(c) discussed above, there is no reading that would align the provision with Mesa's interpretation of the heading. But "[a] contract or a provision of a contract is ambiguous if it is reasonably susceptible of *more than one* construction or interpretation." *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981) (emphasis added). Yet only one interpretation of Section 1(c) makes sense. And as Mesa recognizes in its reply, "when a contract has no ambiguity[,] an otherwise contradictory heading should not be understood to create any." *Ga.-Pac. v. Officemax Inc.*, No. 12-cv-02797-WHO, 2013 WL 5273007, at *9 (N.D. Cal. Sept. 18, 2013); Reply at 8. Because Mesa has not otherwise identified an ambiguity in Section 1(c), the Court finds none created by the heading "Continuous or Progressive Injury and Damages Exclusion."

### iii. Conspicuousness

"[T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 89 P.3d 387, 385 (Cal. 2004) (internal quotation marks omitted). "A coverage limitation is conspicuous when it

is positioned and printed in a manner that will attract the reader's attention. A limitation is plain and clear when, from the perspective of an average layperson, it is communicated in clear and unmistakable language." *Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 74 (Cal. 2005) (internal citations omitted). "When the facts are undisputed . . . the interpretation of a contract, including . . . whether an exclusion or limitation is sufficiently conspicuous, plain, and clear, is a question of law." *Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 896 (Ct. App. 2010).

Mesa contends that Section 1(c), because it is set under the heading "Continuous or Progressive Injury and Damages Exclusion," is "misleading and buried" such that it is not sufficiently conspicuous. And to this end, Mesa primarily relies on *Haynes*'s proposition that limiting language is not conspicuous where "[t]here is nothing in the heading to alert a reader that it limits . . . coverage, nor anything in the section to attract a reader's attention to the limiting language." *Haynes*, 89 P.3d at 386; *see* Mot. at 19–20.

Contrary to Mesa's contention, the Court finds nothing inherently inconspicuous about Section 1(c). As First Mercury notes, the size and intensity of its printing is the same as the rest of the policy. Opp. at 17–18. More important, the Court is unpersuaded by Mesa's argument that Section 1(c) is so unlike what Mesa characterizes as traditional continuous and progressive damages that its inclusion under the "Continuous or Progressive Injury and Damages Exclusion" heading renders it inconspicuous. As Mesa describes it, such exclusions grew from a series of California court decisions that grappled with difficult facts involving alleged damages "subject to extended latency periods." Mot. at 11. The same could be said of the types of damages subject to Section 1(c), as evidenced by the *Borrego* action. Section 1(c) carves out coverage when pre-policy, *latent* construction defects do not manifest and cause damages until later.

The Court thus finds nothing inconspicuous about Section 1(c)'s placement.

//

//

//

//

## IV. CONCLUSION

The Court finds that First Mercury had no duty to defend the common insureds for damages alleged in the *Borrego* complaint because of Section 1(c)'s unambiguous and conspicuous language. The Court thus **DENIES** Plaintiff's motion for partial summary judgment.

The Court **SETS** a further case management conference for August 20, 2019 at 2:00 p.m., in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA.

**IT IS SO ORDERED.**

Dated: 8/16/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge